UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN P. BLANCHARD, ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> *Defendant.* ) | CIVIL NO. 3:17-cv-01534 (KAD) <br><br><br><br><br><br> February 22, 2019 |

**MEMORANDUM OF DECISION RE:**
**MOTION TO REVERSE THE COMMISSIONER'S DECISION (ECF NO. 18) AND**
**MOTION TO AFFIRM THE COMMISSIONER'S DECISION (ECF NO. 19)**

Kari A. Dooley, United States District Judge

**Preliminary Statement**

The Plaintiff, John P. Blanchard, brings this appeal under Section 205(g) of the Social Security Act (hereinafter "the Act"), as amended, 42 U.S.C. § 405(g). He challenges the denial of his application for Title II Disability Insurance Benefits under the Act and requests a reversal of the Commissioner's decision on multiple bases. The Commissioner opposes the motion and avers that the Commissioner's findings were appropriately arrived at and are supported by substantial evidence in the record. She asks this Court to affirm the decision. For the reasons set forth below, the Plaintiff's motion to reverse the Commissioner's decision is DENIED. The Defendant's motion to affirm the decision of the Commissioner is GRANTED.

**Standard of Review**

The Plaintiff sought a determination that he was disabled as of March 22, 2010, the amended purported date of onset, through the date of the hearing. A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has

lasted or can expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). In addition, a claimant must establish that his "physical or mental impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …" 42 U.S.C. § 423(d)(2)(A). The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner considers if the claimant is, at present, working in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). If not, the Commissioner next considers if the claimant has a medically severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. 20 C.F.R. § 416.920(a)(4)(v); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

It is well-settled that the District Court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v.*

*Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive …"). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The Court does not inquire as to whether the record might also support the Plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting [the Plaintiff's] view is not the question here; we must decide whether substantial evidence supports *the ALJ's decision*") (emphasis in original). Thus, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). Once an ALJ finds facts, the Court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

**The ALJ's Decision**

At step one, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the claimed onset date, March 22, 2010 through December 31, 2013, the date last insured. At step two, the ALJ found that the Plaintiff had severe impairments, specifically, mild degenerative disc disease, bilateral knee degenerative joint disease, post-traumatic stress disorder ("PTSD"), and a mood disorder. At step three, the ALJ found that the Plaintiff did not establish an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in the regulations at 20 C.F.R. Part 404, Subpart 4, Appendix 1. At step four, the ALJ determined that the Plaintiff had an RFC to perform a range of light work. The ALJ placed

limitations on this determination, however, finding that the Plaintiff was limited to simple routine tasks; should not work with the general public; and, while he was able to work with others, the Plaintiff should not do work that required frequent or extensive collaboration. In light of these finds, the ALJ determined that the Plaintiff was unable to perform his past relevant work. At step five, the ALJ, crediting the testimony of the vocational expert, determined that were a significant number of jobs in the national economy that the Plaintiff could perform. The ALJ therefore concluded that the Plaintiff was not under a disability during the relevant period, from March 22, 2010, through December 31, 2013, the date last insured.

**Discussion**

At issue in this appeal are the Commissioner's determinations at step four and step five of the sequential analysis. The Plaintiff raises five arguments. First, he asserts that the ALJ violated the treating physician rule by giving insufficient weight to opinions of the Plaintiff's treatment providers and gave too much weight to the State Agency medical consultants. Second, the Plaintiff asserts that the ALJ failed to adequately develop the record. His third argument is that the ALJ did not give adequate weight to the VA disability rating. Fourth, the Plaintiff argues that the ALJ's evaluation of the Plaintiff's pain was insufficient. Finally, the Plaintiff challenges the ALJ's reliance, at step five, on the testimony of vocational expert Jeffrey Joy. The Commissioner, in response, disagrees with each of these assertions and avers that the ALJ's findings are well supported by substantial evidence.

The Court has reviewed the parties' submissions, the decision of the ALJ, the transcript of the proceedings, and the administrative record. The parties have filed a stipulation of facts, submitted as part of the Plaintiff's brief, which the Court incorporates herein. Additional references to the record will be made as necessary.

*The Medical Opinions and Treatment Records*

Pursuant to the so-called "treating physician rule," the Commissioner is to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2); *see also Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009). Where the opinion is contradicted by other substantial evidence in the record, the ALJ is entitled to use discretion in weighing the medical evidence as a whole. *See Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002). In resolving the amount of weight to give a medical opinion, the ALJ should consider the examining relationship; the treatment relationship, the length of the treatment relationship, the nature and extent of the treatment relationship; the evidence supporting the medical opinion; consistency with the record; and specialization of the medical source. *See* 20 C.F.R. §§ 404.1527 and 416.927. The ALJ must provide a reason for any rejection of a treating source opinion. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

### Dr. Schartel

Prior to the hearing, the Plaintiff regularly saw Dr. Schartel from August 2012 to May 2015. On April 22, 2013, Dr. Schartel opined that the Plaintiff had "significant interpersonal problems that would interfere [with] his ability to get along [with] peers [and] supervisors." She opined that he would have an obvious or serious problem performing work activity on a sustained basis"; an "obvious problem performing basic work activities at a reasonable pace/finishing on time"; and "a serious problem using appropriate coping skills to meet ordinary demands of a work environment." She noted that the Plaintiff's "symptoms wax and wane; when in a mood episode, he has significant problems with selfcare and utilizing healthy coping skills."

The ALJ gave little weight to Dr. Schartel's opinions regarding the Plaintiff's limitations. The Plaintiff argues that, in doing so, the ALJ arbitrarily substituted his own judgment for that of

the Plaintiff's treating physician. He argues that the ALJ failed to follow the necessary procedure in evaluating treating physician opinions and failed to identify the "substantial evidence" in the record which would permit less than controlling weight to be given to the treating physician's opinion.

The Commissioner, in response, argues that the ALJ must give and did give "good reasons" for affording little weight to Dr. Schartel's opinion. Specifically, the ALJ found that Dr. Schartel's opinion was given at a time when the Plaintiff's symptoms were exacerbated by his unilateral discontinuation of his medication. Indeed, it appears from the treatment notes that the Plaintiff did not take his prescribed medication from approximately April 2013 until mid-June 2013. The treatment notes during this time period reflect increased irritability and depression as a result. On June 20, 2013, the notes reflect he was "doing better," as he had resumed taking his medication. By June 26, 2013, he is described as "doing well" and had just returned from being out of town visiting his girlfriend. He self-reported that he is "better able to handle stress" when he takes his medication. The ALJ therefore had "good reason" to afford little weight to Dr. Schartel's opinion given at a time that the Plaintiff was not taking his prescribed medication.

The ALJ also observed that the opinion was inconsistent with the treatment records. A review of the treatment record reveals that during the relevant time period, the Plaintiff reported going to church, visiting with his family often, and looking for volunteering opportunities. Further, after his divorce, the Plaintiff became involved with a woman who would become his girlfriend. He travelled frequently to her home in New Jersey and socialized with her family. The Plaintiff told clinicians that he had good social support; that he regularly socialized with a group of high school friends; and that he was planning a beach vacation with his family. The records provided substantial evidence that Dr. Schartel's opinions regarding the limitations on the Plaintiff's daily activities and social interactions were due little weight.

6

Finally, the ALJ cited to the report of Dr. Murphy as inconsistent with Dr. Schartel's opinion. Dr. Murphy, whose assessment was undertaken just four months after Dr. Schartel's opinion (when the Plaintiff was compliant with his medications), noted that the Plaintiff's "hygiene and grooming were neat." He remained seated throughout the evaluation and was neither restless nor fidgety. His mentation and psychomotor behavior were within average range. His speech was fluid and logical. His affect was unremarkable. The Plaintiff self-reported that he "socializes with family a lot, has a long-distance girlfriend, and attends flea markets and yard sales." Dr. Murphy determined he is independent in cooking, grocery shopping, and laundering clothes.

While the ALJ did not discuss in detail the portions of the record he found inconsistent with Dr. Schartel's opinion, he cited to various portions of the record which, upon examination, provide "good reason" to afford little weight to Dr. Schartel's opinion. "[R]eviewing courts do not demand perfect decisions." *Morgan v. Berryhill*, No. 1:15-cv-00449 (MAT), 2017 WL 6031918, at *5 (W.D.N.Y. Dec. 5, 2017) (quoting *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12–cv–1631 (MAD), 2014 WL 420465, at *8 (N.D.N.Y. Feb. 4, 2014)).

***Intern Schmertz***

The Plaintiff was seen by Psychology Intern Schmertz from May 2010 through August 24, 2010, his last date of contact with the Plaintiff. On August 24, 2010, Mr. Schmertz opined that the Plaintiff would have a "serious" problem performing work on a sustained basis. The ALJ afforded little weight to this opinion because the opinion was neither supported by nor consistent with other information contained in the assessment. The ALJ also discounted the opinion because it was given by an intern and because the opinion was not supported by the therapy notes of record.[1] The parties

---

[1] Although the Plaintiff is correct that the chart notes of the Plaintiff's sessions with Mr. Schmertz were in the record before the ALJ, despite the ALJ's assertion to the contrary, the Court find's the ALJ's erroneous statement to be harmless. In his assessment of Mr. Schmertz' opinion, the ALJ specifically cited to Exhibit 5F, which contained the very records the ALJ stated were not included. *See Whitaker v. Berryhill*, No. 3:17-cv-1337 (SRU), 2018 WL 4583508, at *13 (D. Conn. Sept. 25, 2018) ("Even in the face of an oversight, the ALJ's decision may be upheld if the error was 'harmless,' that is, if other 'substantial evidence in the record' supports the ALJ's conclusions") (citations omitted).

disagree as to whether the ALJ was required to consider Mr. Schmertz (and, by extension, Dr. Rubin, who co-signed Mr. Schmertz's opinion) a treating physician for purposes of the treating physician rule. Assuming without deciding that Mr. Schmertz and Dr. Rubin were treating physicians, a review of the record reveals that the ALJ fulfilled his obligations under the treating physician rule insofar as he provided "good reasons for discounting" Mr. Schmertz's opinion, *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010), and cited to evidence in the record to support his assessment. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration"); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (remand is unnecessary "[w]here application of the correct legal standard could lead to only one conclusion.").

The treatment notes during the time that the Plaintiff saw Mr. Schmertz reflect that the Plaintiff was irritable, angry, and in a depressed mood. However, at the very first session, the Plaintiff reported he was "currently pursuing part-time work." He reported that he had started to seek out activities to help him feel as if he is moving forward, such as volunteering, going to church, working at a flea market, and visiting with family. His appearance was described as neat and his behavior cooperative and reasonable. Consistent with the reasons the Plaintiff sought a referral in the first instance, most of the therapeutic interventions dealt with marital strife, child raising issues, and financial stressors.

On June 4, 2010, during the Plaintiff's fourth therapy session, Mr. Schmertz reviewed "barriers to care" and identified those areas where the Plaintiff had strengths and those where he had limitations. Among his strengths, Mr. Schmertz listed cognition, motivation, knowledge, and, significantly, employability. In addition, Mr. Schmertz's assessment is dated in August 2010, a few months following the Plaintiff's inpatient treatment. For this reason alone, it may be of little use because it is clear from the treatment notes following August 2010, to include the notes from

Psychology Intern Carvahlo, that the Plaintiff continued to make significant strides in addressing his mood disorder, irritability, and anger. By January 2011, he was no longer in need of individual counseling, and by April 2011 he reported being socially active and having his mood and anxiety well-controlled.

### *Drs. Ritter and Swanson*

Finally, the State agency medical and psychology consultants, Drs. Rittner and Swanson, respectively assessed that, *inter alia*, the Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and sit, stand and/or walk for a total of 6 hours in an 8-hour workday; and that the Plaintiff "would do best in a non-public work [environment], where contact with others is superficial and infrequent and the need for collaboration is not required."

"State agency medical and psychological consultants ... are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," 20 C.F.R. § 404.1527(f)(2)(I), and, as such, "'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'" *Lewis v. Commissioner,* No. 00–CV–1225, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005) (quoting *Leach ex rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)); *see also Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir. 1983); *Rivera v. Barnhart,* No. 04–CV–6149, 2005 WL 3555501, at *8 (W.D.N.Y. Dec. 9, 2005) (noting case authority that "supports the ... position that the ALJ could find ... a State agency physician's opinion to constitute substantial evidence") (citing *Schisler,* 3 F.3d at 568); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record"); *Wessel v. Colvin*, 2015 WL 12712297, at *7 (D. Conn. Dec. 30, 2015) (citing cases); *Lynn M. v. Berryhill*, No. 5:17-CV-80, 2019 WL 128547, at

*14 (D. Vt. Jan. 8, 2019) ("It is true that state agency medical consultants are highly qualified and are experts in Social Security disability evaluation") (internal quotations and citations omitted).

Here, the ALJ properly afforded these opinions great weight. Notably, Drs. Ritter and Swanson's reports were consistent with objective medical evidence as well as the Plaintiff's "description of his daily activities," *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011), as ascertained through both his testimony and his treatment records. For example, Dr. Ritter's assessment that the Plaintiff's "exertional" and "postural" limitations are consistent with, *inter alia*, the Plaintiff's admitted history of travel, which includes visiting his girlfriend in New Jersey, taking a vacation to Las Vegas, and kayaking with his mother. Similarly, Dr. Swanson's assessments that the Plaintiff was "not severely limited" in his ability to "adhere to basic standards of neatness and cleanliness" is consistent with, *inter alia*, Dr. Murphy's assessment, as discussed above. The assessment that the Plaintiff was only "moderately limited" in his ability to "interact appropriately with the general public" is consistent with the Plaintiff's active participation in flea market sales.

In sum, the ALJ was tasked with considering multiple medical opinions as pieces of the whole record and evaluating them against that record. The ALJ must balance and weigh conflicting evidence. *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (deferring to the Commissioner's resolution of conflicting evidence). Accordingly, the Court finds that the ALJ's opinion assessments were supported by substantial evidence and, in turn, did not run afoul of the treating physician rule. *See Wavercak*, 420 F. App'x at 94 ("the ALJ was not required to defer to" a treating source opinion that "conflicted with [the Plaintiff's] description of his daily activities).

*ALJ's Evaluation of Plaintiff's Pain*

The Plaintiff next challenges the ALJ's determination that the Plaintiff's statements concerning the limiting effects of his symptoms, to include his pain, were not entirely reliable. An

ALJ has discretion to resolve evidentiary conflicts and appraise the credibility of a witness. *See Kuchenmeister v. Berryhill*, No. 16 CIV. 7975 (HBP), 2018 WL 526547, at *12 (S.D.N.Y. Jan. 19, 2018); *Wavercak*, 420 F. App'x at 94. An ALJ's credibility assessment must be afforded great deference so long as it is supported by substantial evidence, *see Barbuto v. Colvin*, No. 13-CV-651, 2014 WL 3572412, *4 (W.D.N.Y. July 21, 2014), and "can be reversed only if [it is] patently unreasonable." *Piertrunti v. Dir., Office of Workers' Comp. Programs,* 119 F.3d 1035, 1042 (2d Cir. 1997); *see also Selian,* 708 F.3d at 420. Where the evidence is inconsistent with a claimant's subjective reports of pain and other symptoms, the ALJ must make credibility findings. *See Brown v. Comm'r of Soc. Sec.*, 310 F. App'x 450, 451 (2d Cir. 2009). An ALJ may reject subjective complaints of pain and other symptoms after weighing the objective evidence, a claimant's demeanor, and other indicia of credibility, but the ALJ must set forth his or her reasons with sufficient specificity to enable the Court to assess whether substantial evidence supports the ALJ's credibility determination. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 9 (N.D.N.Y. 2015).

Here, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms at issue, but he found the Plaintiff not reliable in his statements concerning the intensity, persistence, and limiting effects of these symptoms. In making this determination, the ALJ's opinion pointed to, *inter alia*, inconsistencies between the Plaintiff's testimony and the Plaintiff's subjective complaints to medical providers. For example, the Plaintiff denied caring for his mother, but his therapy notes are replete with discussions of how tired he is from caring for his mother. He also minimized his flea market endeavors in a fashion that is inconsistent with what he reported in treatment. Further, although at first asserting that his travel occurred "longer than three years ago," he ultimately acknowledged that he had gone to Las Vegas the prior October and had gone kayaking with his mother "last summer."

Accordingly, substantial evidence exists in the record to support the ALJ's assessment of the intensity, persistence, and limiting effects of the Plaintiff's impairments. *See Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

*The ALJ Adequately Developed the Record*

The Plaintiff next faults the ALJ for failing to develop the record prior to rendering his assessment of Plaintiff's residual functional capacity. Specifically, the Plaintiff argues that the ALJ should have sought an updated medical source statement from Dr. Schartel and obtained a medical source statement from a member of the team that had been treating the Plaintiff at the Veterans Affairs Medical Center for his knee or back injuries. The Commissioner avers that the nearly one-thousand pages of medical evidence available to the ALJ obviated any alleged need to obtain supplemental evidence.

The ALJ has a duty to create a full and fair record in a disability proceeding. *See Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996). The ALJ must affirmatively develop the record in light of the ALJ's investigatory rather than adversarial role. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004). The Social Security Administration rules provide that "[m]edical reports should include ... [a] statement about what you [i.e., the claimant] can still do despite your impairment(s) .... Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete." *Tankisi v. Commissioner of Social Security*, 521 F. App'x 29, 34 (2d Cir. 2013) (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). The ALJ is required to seek out additional evidence where there are "obvious gaps" in the administrative record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

However, the ALJ need not request a medical opinion from treating physicians where, as here, the record, including medical evidence, treatment notes, and the Plaintiff's testimony, as

discussed above, supports the ALJ's RFC determination. *See Monroe v. Colvin*, 676 F. App'x 5, 8-9 (2d Cir. 2017). Accordingly, the Court finds that the ALJ adequately and appropriately developed the record.

***The VA Disability Rating***

The Plaintiff next challenges the ALJ's determination to give little weight to the VA Disability assessment. Decisions of other governmental agencies are not binding on the Commissioner's disability determination. *See* 20 C.F.R. § 404.1504; SSR 06-03p. Nonetheless, the Second Circuit has held that they are "entitled to some weight and should be considered." *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975) (finding no error where the ALJ considered the VA's 70% disability rating regarding anxiety and 20% disability rating for a disc herniation, but found that the VA's assessment was contradicted by other evidence in the record, including the claimant's daily activities and other medical evidence); *see also Machia v. Astrue*, 670 F. Supp. 2d 326, 336 (D. Vt. 2009) ("VA rating decisions are another item to be placed on the evidentiary scale.")

Here, the ALJ stated that he considered the VA's determination but gave it little weight, noting that a finding of disability is reserved for the Commissioner and that decisions of other agencies regarding disability are not binding, as they are not based on Social Security law. Moreover, the ALJ concluded that the evidence summarized throughout the decision, as discussed above, demonstrated that the Plaintiff had an RFC that permitted work subject to certain limitations, which was inconsistent with the VA rating. In sum, the ALJ gave specific reasons for not affording the VA determination more weight. *See Frost v. Colvin*, No. 1:14-CV-00965 (MAT), 2017 WL 2618099, at *3 (W.D.N.Y. June 16, 2017) (finding no error where the ALJ noted that it considered the VA's disability assessment but explained its reasoning for not giving it more weight); *Longbardi v. Astrue*, No. 07 Civ. 5952, 2009 WL 50140, at *22 (S.D.N.Y. Jan. 7, 2009)

("Courts in this Circuit have long held that an ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error.") (internal quotation omitted). Accordingly, the ALJ applied the correct legal standard when he afforded little weight to the VA's disability determination, and the ALJ's decision to do so is supported by substantial evidence.

***The Step Five Findings***

The Plaintiff challenges the testimony of vocational expert Jeffrey Joy, who testified that the Plaintiff retained the ability to perform such occupations as laundry linen folder, mail room clerk, and delivery marker and router.

Evidence from a vocational expert may be derived from the Dictionary of Occupation Titles and also from other reliable publications. *See* 20 C.F.R. §§ 404.1566(d)-(e); 416.966(d)-(e); SSR 00-4p. An ALJ may rely on vocational expert testimony where the expert identified the sources consulted to determine the incidence factors. *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008). Courts consistently uphold decisions relying on vocational expert testimony. *See, e.g., Harper v. Berryhill*, No. 3:16-CV-01168 (SALM), 2017 WL 3085806, at *15-16 (D. Conn. July 20, 2017); *Dimauro v. Berryhill*, No. 3:16-CV-1329 (WIG), 2018 WL 3872154, at *6 (D. Conn. Aug. 15, 2018); *Sena v. Berryhill*, No. 3:17-CV-912 (MPS), 2018 WL 3854771, at *15 (D. Conn. Aug. 14, 2018). Although the Plaintiff claims that Joy did not provide his methodology used to derive his national job incidence data, it is clear from his testimony that Joy relied upon the RFC and the *Dictionary of Occupational Titles* to determine occupations the Plaintiff could perform given his restrictions. The Second Circuit has held that a "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available[.]" *Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960). Nonetheless, "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." *McIntyre* 758 F.3d at 152; *see also Brault*, 683 F.3d at 450

n.6 ("The ALJ [does] not need to find specific numbers of jobs – all he [is] required to do [is] find that substantial positions exist."); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012) ("The VE utilized reliable statistical sources as well [as] personal knowledge and experience to develop the occupational projections provided. While the VE did not provide a step-by-step description of the methodology used, this Court cannot say that the ALJ erred in accepting the VE's testimony as reliable, as there was a sufficient basis for the ALJ to so find."), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). Here, however, Joy identified "with specificity" the number of jobs in the national economy that the Plaintiff could perform. Further, the Plaintiff's attorney was given an opportunity to cross-examine Joy on these issues. *See Brault*, 683 F.3d at 451 ("[Plaintiff's] attorney had a full opportunity to explain his objections [to the VE's testimony] in significant detail. Nothing more was required."). The ALJ therefore reasonably relied on Joy's testimony in finding that "substantial positions" exist.

Finally, the Plaintiff also argues that the ALJ posed a hypothetical to the vocational expert that included an erroneous determination of Plaintiff's limitations. The hypothetical was based upon the ALJ's determination that the Plaintiff could do "light work" subject to certain limitations. The question for this Court is therefore whether the ALJ's determination in this respect is supported by substantial evidence in the record. For the reasons discussed above, and after review of the entire record, the Court answers this inquiry in the affirmative. *See Matta*, 508 F. App'x at 56. Insofar as the ALJ's determination of the Plaintiff's RFC is supported by substantial evidence in the record, the use of that RFC in fashioning the hypothetical question for the vocational expert was appropriate. The expert opined that there are a significant number of jobs in the national economy that the Plaintiff can perform, even with and subject to his limitations. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence in the record.

It is worth repeating that if the Commissioner's findings are supported by substantial evidence, which is "more than a mere scintilla," then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). This is so, even if substantial evidence could support a contrary conclusion or where the Court's independent analysis might differ from the Commissioner's. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied,* 459 U.S. 1212 (1983). Against this standard, the Court affirms the decision of the Commissioner.

**Conclusion**

For all of the foregoing reasons, the Plaintiff's motion to reverse the Commissioner's decision is DENIED. The Defendant's motion to affirm the decision of the Commissioner is GRANTED.

The Clerk is instructed to enter judgment in favor of the Commissioner and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of February 2019.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE